**REED SMITH LLP**

599 Lexington Avenue, 22nd Floor
New York, NY 10022
Telephone: (212) 521 5400
Facsimile: (212) 521 5450
mvenditto@reedsmith.com

*Attorneys for*
*South Carolina Public Service Authority*

**REED SMITH LLP**
Paul M. Singer
225 Fifth Avenue
Pittsburgh, PA 15222
psinger@reedsmith.com

Derek J. Baker
1717 Arch Street
Philadelphia, PA 19103
dbaker@reedsmith.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>WESTINGHOUSE ELECTRIC COMPANY LLC,<br><br>*et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 17-10751 (MEW)<br><br>(Jointly Administered) |
| WESTINGHOUSE ELECTRIC COMPANY LLC, *as reorganized*<br><br>Plaintiff,<br><br>v.<br><br>SOUTH CAROLINA PUBLIC SERVICE AUTHORITY<br><br>Defendant. | Adv. Proc. No. 19-01109-(MEW) |

**REPLY IN FURTHER SUPPORT OF DEFENDANT SOUTH CAROLINA PUBLIC SERVICE AUTHORITY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant South Carolina Public Service Authority ("Santee Cooper"), hereby submits this reply ("Reply") in further support of its *Motion to Dismiss Plaintiff's Complaint* [ECF No. 5] (the "Motion to Dismiss")[1] and in response to the *Westinghouse Electric Company*

---
[1] Capitalized terms used but not defined herein have the meaning given to them in the Motion to Dismiss.

*LLC's Opposition to South Carolina Public Service Authority Motion to Dismiss Plaintiff's Complaint* [ECF No. 14] (the "Response" or "Resp.") filed in the above-captioned proceeding (this "Adversary Proceeding").

## PRELIMINARY STATEMENT

Reorganized Westinghouse Electric Company LLC ("Reorganized WEC") commenced this Adversary Proceeding with a single-count complaint (the "Complaint" or "Compl.") [ECF No. 1]. The sole purpose of the Complaint is to determine whether Reorganized WEC has title to certain items of Equipment located at the V.C. Summer nuclear site in Jenkinsville, South Carolina. Compl. at Count I. Notwithstanding the simple nature of this dispute, Reorganized WEC attempts to recast its single-count Complaint as a complex and layered question of federal bankruptcy law. Despite its best attempts to paint this post-confirmation title dispute as a fundamental matter of bankruptcy law wrapped up in the confirmed Plan, the issue in this Adversary Proceeding has no nexus to the Reorganized WEC's predecessor's Chapter 11 Case. This is a title dispute between two non-debtor parties that turns on the application of non-bankruptcy law. Since the outcome of this Adversary Proceeding will have no conceivable effect on the Debtor's[2] bankruptcy estate or any other party in interest in the confirmed Chapter 11 Case, this Court is without jurisdiction to adjudicate the Complaint.

The irrelevant facts and figures cited by Reorganized WEC (which do not require or rely upon the Plan) only obscure the issue before the Court. Those facts cited in the Response highlight that the dispute does not affect the interpretation, implementation, consummation, execution or administration of the Plan.

---

[2] "Debtor" refers to the pre-petition and pre-confirmation Westinghouse Electric Company LLC along with certain of its affiliates. Debtor is not to be confused with Reorganized WEC.

- 2 -

**LEGAL ARGUMENT**

    A.    **The dispute does not implicate a "core" matter nor federal bankruptcy law.**

When presented with a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, the Court must determine if it has the subject matter jurisdiction necessary to consider the merits of the action. See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990). As the party asserting jurisdiction, Reorganized WEC bears the burden to establish that jurisdiction is proper. Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002). Here, it cannot.

Reorganized WEC asserts the dispute is within this Court's jurisdiction because it "implicates a core issue of whether the [Equipment] was property of the estates" and "turns entirely on the application of federal bankruptcy law and this Court's order." Resp. ¶¶ 42 and 44. Simply using the bankruptcy parlance of "core" does not satisfy Reorganized WEC's burden. Notably, Reorganized WEC does not identify under which of the core matters enumerated in 28 U.S.C. § 157(b) this dispute allegedly falls.

The issue of whether certain items of the Equipment were property of the Debtor's estate is of no consequence in this Adversary Proceeding. When the Plan became effective, property of the estate re-vested in Reorganized WEC. Plan at §5.1; Confirmation Order at ¶ GG. The only issue in this Adversary Proceeding is whether the Debtor had any rights in the Equipment that could have re-vested in Reorganized WEC. Nothing about the Bankruptcy Code or the Plan is implicated in the current dispute.

Reorganized WEC's assertion that the dispute implicates federal bankruptcy law is inconsistent with Reorganized WEC's repeated statements in the Complaint and Response that the EPC Agreement governs the ownership of the Equipment. See Compl. at ¶ 18 (Title to all

Equipment [ . . . ] is governed by Article 21.1 of the EPC Agreement"); Compl. at ¶ 55 ("Under the EPC Agreement, Reorganized WEC has title to the [] Equipment"); Resp. at ¶ 2 ("As a threshold matter, under the terms of the EPC Agreement, the equipment at issue only became property of Santee Cooper once it was paid for in full."); Resp. at ¶ 11 ("Passage of title to Equipment from WEC to the Owners is governed by Section 21.1 of the EPC Agreement."); Resp. at ¶¶ 18-19 (explaining that title to the Equipment only passed pursuant to the terms of the EPC Agreement); Resp. at ¶ 43 ("Under the EPC Agreement, Santee Cooper was required to pay 'in full' for the WEC Equipment, otherwise title remained with the Debtors.").

Without question, the issue presented in this Adversary Proceeding involves the title to property which is not part of the Debtor's estate. Courts have held that questions regarding interests in non-estate property based upon non-bankruptcy law are not "core." See In re W.S.F.-World Sports Fans, LLC, 367 B.R. 786, 794 (Bankr. D.N.M. 2007)(holding a debtor's interest in the proceeds of estate property based upon pre-petition conduct regarding the formation and terms of the underlying contract was not a core proceeding); In re Boston Reg'l Med. Ctr., Inc., 265 B.R. 645, 650 (Bankr. D.Mass. 2001)(holding that an action to determine the validity and extent of a debtor's pre-petition interest in estate property was a not a core proceeding).

Further, courts in this jurisdiction have indicated that, in the post-confirmation context, the core versus non-core distinction is not determinative of subject matter jurisdiction. See Neptune World Wide Moving, Inc. v. Schneider Moving & Storage Co. (In re Neptune World Wide Moving, Inc.), 111 B.R. 457, 464 (Bankr. S.D.N.Y. 1990) ("[t]he fact that Neptune's adversary proceeding might be characterized as core does not mean that this court retains subject matter jurisdiction to hear it after confirmation . . . ."); General Media v. Guccione (In re General Media, Inc.), 335 B.R. 66, 74 (Bankr. S.D.N.Y. 2005) ("[T]he distinction between core and non-

core jurisdiction may not be particularly relevant after confirmation."); In re Ener1, Inc., 558 B.R. 91, 95-96 (Bankr. S.D.N.Y. 2016) (same). Rather, the question of post-confirmation subject matter jurisdiction must be established by satisfying the close nexus test.

      **B.**      **Reorganized WEC has not satisfied the close nexus test.**

Reorganized WEC has not established that the Complaint bears a close nexus to the Debtor's Chapter 11 Case so as to create the requisite subject matter jurisdiction for this Court to adjudicate the Complaint. As this Court has recognized:

> Section 1334 of title 28 does not distinguish between a court's pre-confirmation and post-confirmation jurisdiction. However, if a lawsuit is filed after a business has reorganized and emerged from bankruptcy the "conceivable effect" test often gives way to a more limited "close nexus" test. Under the "close nexus" test, "related to" jurisdiction does not exist unless (a) a dispute has a close nexus to the bankruptcy case (as when a matter requires interpretation or administration of the confirmed plan), and (b) the plan retains jurisdiction over the dispute.

In re Stillwater Asset Backed Offshore Fund Ltd., 559 B.R. 563, 573 (Bankr. S.D.N.Y. 2016)(internal citations omitted)(holding that the close nexus test applies when the confirmed plan is a plan of reorganization; but applying the "broader" conceivable effect test for a plan of liquidation). This Court properly noted the close nexus test is applied because "after confirmation a reorganized company 'is without the protection of the bankruptcy court' and 'may not come running to the bankruptcy judge every time something unpleasant happens.'" Id. at 574 (citing Pettibone Corp. v. Easley, 935 F.2d 120, 122 (7th Cir. 1991)).

Applying the close nexus test, the court in In re Lehman Bros. Holdings Inc., No. 18-CV-8986-VEC, 2019 WL 2023723, at *1 (S.D.N.Y. May 8, 2019) ("LBHI") found that a close nexus exists where the post-confirmation litigation affected "the execution and administration of the confirmed bankruptcy plan" by having "a direct effect on the amount of money available to be

- 5 -

distributed to creditors" ***and*** that the claims themselves were factually related to the debtor's bankruptcy proceeding. Id. at *9-11. These elements are not present here.

Clearly, the Adversary Proceeding will not impact the amount of money available to be distributed to creditors of the Debtor's estate. Under the confirmed Plan, distributions to creditors are made by a special purpose entity that was fully funded at confirmation. See Plan at ¶ 7.1 (creating a new entity, Wind Down Co., charged with the post-confirmation distribution to claimants). Moreover, Reorganized WEC has been discharged of any liability for the claims of creditors. Confirmation Order at ¶ 14 ("Reorganized Debtors shall be discharged, on the Effective Date, from all Claims, interest, Liens, other encumbrances, and liabilities of any kind or nature whatsoever . . ."). Accordingly, the only parties with an economic interest in resolving the contractual dispute at the heart of the Adversary Proceeding are Reorganized WEC and Santee Cooper. No other party in the bankruptcy case is (or could be) affected.

Further, the title dispute raised in the Adversary Proceeding is not factually related to the Chapter 11 Case. As Reorganized WEC repeatedly admits, the question of ownership of the various items of Equipment does not turn on any issue or document arising in or related to the Chapter 11 Case. Neither the Plan, the PFA, nor the Confirmation Order addresses, or contemplates addressing, title to the various items of Equipment. Reorganized WEC repeatedly admits that the EPC Agreement (and the EPC Agreement alone) "governs the ownership of the [E]quipment." See Compl. at ¶ 18 (Title to all Equipment […] is governed by Article 21.1 of the EPC Agreement"); Compl. at ¶ 55 ("Under the EPC Agreement, [Reorganized WEC] has title to the [] Equipment"); Resp. at ¶ 2 ("As a threshold matter, under the terms of the EPC Agreement, the equipment at issue only became property of Santee Cooper once it was paid for in full."); Resp. at ¶ 11 ("Passage of title to Equipment from WEC to the Owners is governed by Section

21.1 of the EPC Agreement."); Resp. at ¶¶ 18-19 (explaining that title to the Equipment only passed pursuant to the terms of the EPC Agreement); Resp. at ¶ 43 ("Under the EPC Agreement, Santee Cooper was required to pay 'in full' for the WEC Equipment, otherwise title remained with the Debtors."). Since Reorganized WEC admits that the title issue is dependent on the EPC Agreement and independent of any provision of the Plan, Reorganized WEC cannot meet its burden to show how the claims raised in the Complaint bear any nexus (much less a close nexus) to the Plan to meet the required jurisdictional element.

Reorganized WEC hopes to establish jurisdiction by asserting that the Plan and Confirmation Order provide for post-confirmation jurisdiction over this dispute. Resp. at ¶ 47. While Paragraph 47 of the Response provides a list of post-confirmation retained jurisdiction, this list does not specifically reference retention of jurisdiction to hear this title issue. "Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization." In re Resorts Int'l, Inc., 372 F.3d 154, 161 (3d Cir. 2004)(internal citations omitted).

Importantly, the Plan provides that after its Effective Date, Reorganized WEC will operate its business and "use, acquire, and dispose of property without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order." Plan § 5.1. Reorganized WEC cannot now seek bankruptcy court supervision of its post-confirmation assets because the very Plan that was confirmed required Reorganized WEC's operations to be free of any bankruptcy limitations or oversight.

### C.     Reorganized WEC's other arguments are unavailing.

As part of its efforts to recast the nature of the dispute, Reorganized WEC asserts additional or alternative grounds as the bases for its alleged interest in the Equipment: (i) that it has title to the Equipment by virtue of the listing of the Equipment in the Debtor's Schedules; and (ii) Santee Cooper failed to file a proof of claim asserting an interest in the Equipment and, therefore, title to the Equipment vested in Reorganized WEC. See Resp. at ¶¶ 20 and 41, respectively.

Despite Reorganized WEC's statement, the Debtor's Schedules do not identify the Equipment. Rather, the Schedules list generic categories of personal property without any meaningful descriptions or reference to the Project or even location of the personal property. [ECF No. 569 at 29 and 32]. Further, whether the Equipment is listed on the Debtor's Schedules is not dispositive of title to the Equipment. As Reorganized WEC acknowledges, Santee Cooper (together with its partner, SCE&G) paid the Debtor over $7 Billion for the Equipment associated with the completion of the V.C. Summer nuclear reactors. Resp. at ¶ 16. The fact the Equipment—in part or in whole—may have been included in the Debtor's Schedules does not change the fact that title to some or all of the Equipment is owned by Santee Cooper. Under Reorganized WEC's reasoning, a debtor could list the Brooklyn Bridge as an asset and, in doing so, obtain ownership if the users failed to file a proof of claim.

Reorganized WEC's assertions regarding Santee Cooper's alleged failure to file a proof of claim to assert an interest in the Equipment located at the V.C. Summer site likewise misses the mark. Santee Cooper paid for, and therefore owns, the Equipment. Santee Cooper was not required to file a proof of claim to preserve title to assets it owns. The single issue in the

Complaint is which items of the Equipment belong to Reorganized WEC and which belong to Santee Cooper.  Nothing around that issue bears any nexus to the confirmed Plan.

## CONCLUSION

For the forgoing reasons, Reorganized WEC has not met its burden under the close nexus test, the claims asserted in the Complaint are not core or otherwise related-to the Chapter 11 Case, and this Court is without the requisite subject matter jurisdiction to adjudicate the Adversary Proceeding.  Accordingly, Santee Cooper respectfully requests this Court to enter an order, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure as made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure, (i) granting the Motion to Dismiss, (ii) dismissing the Complaint, and (iii) providing for such other relief as is just and proper.

Dated: June 7, 2019
New York, New York

Respectfully submitted,

*/s/ Michael J. Venditto*
**REED SMITH LLP**
Michael J. Venditto
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Telephone: (212) 521 5400
Facsimile: (212) 521 5450
mvenditto@reedsmith.com

Paul M. Singer
225 Fifth Avenue
Pittsburgh, PA 15222
psinger@reedsmith.com

Derek J. Baker
1717 Arch Street
Philadelphia, PA 19103
dbaker@reedsmith.com

*Attorneys for*
*South Carolina Public Service Authority*