**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                                                  :
                                                               :    Chapter 11
**WESTINGHOUSE ELECTRIC**                       :
**COMPANY LLC,** *et al.***,**                  :    Case No. 17-10751 (MEW)
                                                               :
                      **Debtors.**                    :    **(Jointly Administered)**
------------------------------------------------------------x
**WESTINGHOUSE ELECTRIC**                       :
**COMPANY LLC,** *as reorganized***,**          :
                                                                :
                    **Plaintiff,**                  :
                                                                :
v.                                                                     :    Adv. Proc. No. 19-01109 (MEW)
                                                                 :
**SOUTH CAROLINA PUBLIC SERVICE**               :
**AUTHORITY,**                                  :
                                                                :
                   **Defendant.**                  :
------------------------------------------------------------x

## DECISION DENYING MOTION TO DISMISS

A P P E A R A N C E S:

REED SMITH LLP
Attorneys for South Carolina Public Service Authority
        By:  Michael J. Venditto
               Paul M. Singer
               Derek J. Baker

WEIL, GOTSHAL & MANGES LLP
Attorneys for Westinghouse Electric Company LLC
        By:  Gary T. Holtzer
               Edward Soto
               Robert S. Berezin
               David N. Griffiths

**MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

       Westinghouse Electric Company LLC ("**WEC**") seeks in this adversary proceeding to

recover equipment that it claims that it owns and that remains in the possession of defendant

South Carolina Public Service Authority ("**Santee Cooper**"). The complaint alleges that the

equipment was purchased by WEC and was used at the so-called VC Summer Site, at which WEC formerly was engaged in the construction of nuclear power plants. WEC alleges that the ownership of the equipment is governed by the terms of an Engineering, Procurement, and Construction Agreement dated May 23, 2008 (the "**EPC Agreement**"). WEC further alleges that, pursuant to the EPC Agreement, title to the equipment was to pass to Santee Cooper only upon payment in full by Santee Cooper to WEC for such equipment. Payments allocated to so-called "Major Equipment" were invoiced and tracked regularly, but the EPC Agreement does not specify how progress payments were to be allocated towards so-called "Non-Major Equipment."

The EPC Agreement was rejected during the course of WEC's chapter 11 case. WEC alleges that Santee Cooper did not pay in full for certain equipment and that WEC should be allowed to reclaim the equipment and to sell it. Santee Cooper has taken the position that it is now the owner of the equipment under the terms of the EPC Agreement and under certain other theories that (as described below) have not been well-defined.

This adversary proceeding was filed after the confirmation of a plan of reorganization and after the ownership of WEC was transferred to a buyer named Brookfield WEC Holdings Inc. The asserted claims are made by WEC, which is no longer a debtor-in-possession. Santee Cooper contends that the parties' dispute only requires the resolution of state law contract issues and that the outcome will have no impact on the bankruptcy estate, and it has moved to dismiss the complaint for lack of subject matter jurisdiction.

## The Issues in Dispute

The WEC Complaint seeks an order directing that WEC is the rightful owner of the relevant equipment and is entitled to immediate possession of it. *See* Complaint at 16. WEC's primary claim is that the EPC Agreement governs title to the equipment and that WEC is the

2

rightful title owner of the equipment pursuant to that agreement.  In addition to these contract claims, however, WEC also asserts in its complaint that Santee Cooper is barred from claiming ownership of the relevant equipment by virtue of certain events that occurred during the course of the WEC bankruptcy case.

First, WEC argues that Santee Cooper filed proofs of claim related to the EPC Agreement, but that following the rejection of that agreement Santee Cooper filed no proof of claim based on the rejection of the EPC Agreement.  *Id. ¶* 35.  WEC contends that as a result Santee Cooper is barred from asserting that it owns the equipment as a consequence of the rejection of the EPC Agreement, as any such contention was discharged by the confirmation of the Plan.

Second, WEC argues that this Court approved a transfer of all assets of the debtors with the exception of "Excluded Assets."  Since the relevant equipment was not listed as "Excluded Assets," WEC contends that this Court vested legal title to the equipment in the reorganized WEC, and that Santee Cooper's ownership claim therefore conflicts with this Court's prior orders.  *Id*. ¶¶ 6, 36.  It also contends that Santee Cooper's failure to allow WEC to take possession of the equipment constitutes a breach of this Court's injunction, set forth in the confirmation order, that bars parties from interfering with the implementation of the Plan and the implementation of the transactions contemplated by the Plan.  *Id.*

Third, WEC alleges that Santee Cooper led WEC to believe that there was no dispute as to ownership of the equipment until early 2019, when Santee Cooper allegedly "for the first time" took the position that it owns the equipment.  *Id*. ¶ 41.

WEC also alleges that Santee Cooper submitted to the jurisdiction of this Court by filing proofs of claim and that the EPC Agreement contained a consent to jurisdiction in the Southern

3

District of New York. Those allegations, however, appear to have been made in support of WEC's allegations that this Court has personal jurisdiction over the parties, which is not at issue in the present motion.

Santee Cooper has moved to dismiss, and in support of that motion it has argued that the parties' dispute does not implicate any of the proceedings in the bankruptcy case or the agreements approved by the Court, and instead merely requires resolution of a state-law contract issue between two non-debtors. It has further argued that the resolution of title to the equipment would not affect the bankruptcy estates, and that the dispute therefore lacks a sufficient relation to the bankruptcy case to support an exercise of bankruptcy jurisdiction.

Six days after filing its motion to dismiss, however – and without waiting for a resolution of the motion – Santee Cooper filed a complaint against WEC and other parties in the United States District Court for the District of South Carolina. Santee Cooper's complaint seeks (as to WEC) to resolve the same ownership disputes that are presented in this adversary proceeding.[1] While the complaint in the South Carolina case raises some state law issues, it also makes clear that the disputes between the parties are not limited to those issues.

Santee Cooper does allege in its South Carolina complaint that the total payments under the EPC Agreement exceeded the cost of the equipment and therefore that Santee Cooper owns the equipment. *See* South Carolina Complaint, attached to letter dated June 17, 2019 [Dkt. No. 18] ¶ 32. However, Santee Cooper also contends that WEC waived ownership rights to the equipment because WEC did not specifically list each separate item of equipment in the Schedules of Assets and Liabilities that WEC filed in its bankruptcy case. *Id.* ¶¶ 44-45, 52.

---

[1] Santee Cooper has since agreed to "stand down" and not to prosecute the South Carolina action until after a determination of whether this action will proceed. [Dkt. No. 10.]

Santee Cooper further asserts that WEC's actions during the bankruptcy case – including its failure to reclaim the equipment at an earlier date and, apparently, the rejection of the EPC Agreement – should be treated as a waiver of ownership claims or should otherwise estop WEC from claiming ownership. *Id*. ¶¶ 55-57.

During oral argument of the motion to dismiss the Court asked for more detailed explanations of the parties' respective positions, so that the Court could determine the extent to which their dispute focused solely on state law contract issues or instead involved bankruptcy-specific issues, including issues as to the effects of this Court's prior orders. Counsel to Santee Cooper stated in response that Santee Cooper contends that it fully paid for the equipment, but also that "it's been delivered to the site in South Carolina, and under Article 2 of the Uniform Commercial Code, along with both provisions of the EPC, that we believe we have title." *See* Transcript, June 11, 2019, at 6-7. Counsel further explained that Santee Cooper intended to argue that the EPC Agreement might not be determinative of ownership and that Santee Cooper is entitled to ownership because "delivery . . . would ordinarily transfer title." *Id*. at 8, 11. But when asked more directly whether Santee Cooper is taking the position that the rejection of the EPC Agreement constituted a waiver of ownership rights in the equipment, counsel gave an equivocal answer, contending that he had "not studied the South Carolina complaint to determine exactly whether it's based on this theory or that theory." *Id*. at 9. When pressed again on the point, counsel said he did not know if Santee Cooper was taking the position that the rejection of the EPC Agreement altered any ownership rights WEC had under the terms of that agreement. *Id*. at 22-23. However, WEC's counsel, during oral argument, presented the Court with a copy of a letter from Santee Cooper, in which Santee Cooper asserted plainly that the rejection terminated any ownership rights that WEC could claim under the EPC Agreement.

At the conclusion of oral argument, the Court made the following comments and issued the following directive:

> The premise of the motion to dismiss is that this is purely a state law issue that has nothing to do with bankruptcy or with the effect of orders that I entered during the bankruptcy case. But it appears that the dispute, in fact, may involve issues relating to the effect of the rejection of the contract, which is something that happened pursuant to my orders, and I don't feel that I have a clear answer today as to just what Santee Cooper is planning to contend in that regard.
>
> I am not willing to have a situation in which I am asked to dismiss a case on the theory that the only issue is the interpretation of the EPC, or the effect of a breach, only to find that that isn't the issue, and that in fact, other issues that might have been relevant to my decision as to whether I have jurisdiction, have simply been downplayed [here] for purposes of being not sacrificed, [while] actually [being] asserted elsewhere.
>
> So I want you to submit, on behalf of Santee Cooper, a clear statement in a form that will be binding on you, in the event I were to dismiss the case, as to exactly what you are claiming as to the source of your rights, and exactly what you are contending in terms of the effect or lack of effect of rejection of the contract, so that I can decide, to the extent that this dispute either does or doesn't raise bankruptcy issues. And it has to be a clear statement, a binding statement because I am not going to have a situation where I dismiss because I assume something is not an issue, only to find out that it is, okay?

*Id.* at 59-60.

Santee Cooper submitted an affidavit on June 17, 2019 in response to the Court's direction. [Dkt. No. 18-2] Santee Cooper stated that it claims ownership by reason of the delivery of the equipment to Santee Cooper and by reason of Santee Cooper's maintenance of the equipment. *Id*. ¶¶ 6-7. It confirmed that it does not contend that the rejection of the EPC Agreement had the effect of terminating that agreement, and it argued that the rejection was a "breach," the effect of which should be governed by state law. *Id*. ¶¶ 10-13. It also confirmed that the reorganized WEC owns whatever rights WEC previously had to the equipment "under the EPC Agreement." *Id*. ¶¶ 13-14. However, it somewhat cryptically added the following:

6

> While Santee Cooper believes that its ownership of Equipment may derive in part from the EPC Agreement, Santee Cooper also believes that its ownership of the equipment derive from other applicable state law *resulting from Westinghouse's breach of the EPC Agreement and other equitable theories*.

*Id*. ¶ 18 (emphasis added). Instead of providing the "clear statement" that the Court had directed, this paragraph continued to obfuscate Santee Cooper's contentions. It makes clear that Santee Cooper contends that the EPC Agreement does not fully govern the parties' rights and that in some respect this is due to Santee Cooper's possession and maintenance of the equipment and to the rejection of the EPC Agreement. But it fails to explain why, and fails to explain why this is an issue purely of state law and not of the effects (under bankruptcy law) of the orders issued by this Court. The affidavit also summarized Santee Cooper's other contentions and made clear that Santee Cooper continues to claim ownership on waiver or estoppel grounds. *Id*. ¶ 20(d).

WEC immediately pounced on the vague language of paragraph 18 of the Santee Cooper affidavit. WEC argued (among other things) that any claimed "equitable" rights to the equipment (independent of the EPC Agreement) constituted "claims" that Santee Cooper was required to assert during the chapter 11 case. No such claims were asserted and any unasserted claims were discharged by the confirmation of the bankruptcy plan. As a result, WEC argues, Santee Cooper's attempts to pursue such claims is in violation of the bankruptcy discharge as well as in violation of the injunctions set forth in this Court's confirmation order.

## Discussion

This Court has jurisdiction over civil proceedings that arise "under" the Bankruptcy Code or that "arise in" or are "related to" cases under the Bankruptcy Code. *See* 28 U.S.C. §§ 157, 1334; Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated as of January 31, 2012. WEC has not argued that the disputes with Santee Cooper arose "under" the Bankruptcy Code, and it has not argued that the

7

disputes arose "in" the WEC bankruptcy case. Instead, WEC has contended that the disputes are "related to" the WEC bankruptcy case.

Generally, before a plan is confirmed, "a civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate." *Residential Funding Co., LLC v. UBS Real Estate Secs. (In re Residential Capital, LLC)*, 515 B.R. 52, 63 n.12 (Bankr. S.D.N.Y. 2014) (citing *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)). Section 1334 of title 28 does not distinguish between a court's pre-confirmation and post-confirmation jurisdiction. However, if a lawsuit is filed after a business has reorganized and emerged from bankruptcy the "conceivable effect" test often gives way to a more limited "close nexus" test. *ACE Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 448 Fed. Appx. 134, 137 (2d Cir. 2011) (summary order). Under the "close nexus" test, "related to" jurisdiction does not exist unless (a) a dispute has a close nexus to the bankruptcy case (as when a matter requires interpretation or administration of the confirmed plan), and (b) the plan retains jurisdiction over the dispute. *Savoy Senior Hous. Corp. v. TRBC Ministries, LLC*, 401 B.R. 589, 597 (S.D.N.Y. 2009).

Courts have applied the more limited "close nexus" test after a reorganized debtor has emerged from bankruptcy because the purpose of plan confirmation is to free the reorganized business from court supervision. *See In re Park Ave. Radiologists, P.C.*, 450 B.R. 461, 468 (Bankr. S.D.N.Y. 2011); *see also Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991) (noting that after confirmation a reorganized company "is without the protection of the bankruptcy court" and "may not come running to the bankruptcy judge every time something unpleasant happens"). Courts have expressed concern that the continued application of the

8

"conceivable effect" test could result in an unwarranted exercise of jurisdiction over the post-confirmation business of a reorganized debtor:

> . . . [A]pplying the general ["conceivable effect"] rule without qualification after the confirmation of a reorganization plan easily could result in the bankruptcy court retaining jurisdiction of all cases affecting the reorganized debtor for many years thereafter. This prospect not only would work an unwarranted expansion of federal court jurisdiction but also would unfairly advantage reorganized debtors by allowing such firms to funnel virtually all litigation affecting them into a single federal forum.

*In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 106 (1st Cir. 2005).

WEC and Santee Cooper agree that the "close nexus" test is properly applied in deciding if this Court has jurisdiction. WEC has argued that the Plan includes a broad retention of jurisdiction that covers this dispute, and Santee Cooper has not argued to the contrary. Where the parties disagree is as to whether the dispute requires a resolution of any issues that have a "close nexus" to the bankruptcy case.

In resolving this question, it is plain that I ought to consider, at a minimum, the arguments set forth in the Complaint that WEC filed. It is less clear whether I ought to consider the arguments that Santee Cooper has raised in support of its own competing ownership claims. Courts have struggled with the extent to which the "well pleaded complaint" rule applies in deciding whether a dispute "relates to" a bankruptcy case. *See Bank of Am., N.A. v. Brennan Title Co. (In re Donoho)*, 402 B.R. 687, 694-698 (Bankr. E.D. Va. 2009) (reviewing the case law and concluding that "related to" jurisdiction should be examined based on both parties' contentions and not just on those set forth in a complaint).

In this case, the Court concludes that it is proper to consider not only WEC's contentions as to the factors that it believes should be decisive in resolving the parties' disputes, but also the competing contentions that Santee Cooper has made. This is true for two reasons

9

First, WEC has in effect asked this Court to rule on all of these issues by asking this Court to rule generally that WEC owns the equipment, that it is entitled to possession of the equipment, and that any failure to turn over possession is a violation of the discharge and the injunctions issued by this Court. In that respect, the entirety of the parties' dispute is fairly encompassed in WEC's Complaint and in the relief requested.

Second, I agree with *Donoho* and other decisions that have held that it is proper to consider all of the parties' respective contentions, and not just those set forth in a complaint, in deciding whether the parties' dispute is "related to" the bankruptcy case and has a "close nexus" to the bankruptcy case. In this regard, I note that Santee Cooper itself argued, in the memorandum it filed in support of its motion to dismiss, that in measuring the scope of "related to" jurisdiction this Court is not limited to the pleadings themselves, but may look to other matters, including extrinsic evidence. *See* Memorandum of Law [Dkt. No. 5] at p. 6.

It seems quite clear that at least one issue (if not the primary issue) to be decided in this proceeding is how the payments that Santee Cooper made under the EPC Agreement should be allocated, and whether or not Santee Cooper actually provided full payment for the equipment and brought about a transfer of title that preceded the confirmation of the Plan and the approval of the Plan Funding Agreement. If the parties' disputes were limited to that discrete state-law contract issue then it would be questionable whether bankruptcy jurisdiction existed. *See Penthouse Media Group v. Guccione (In re General Media, Inc.)*, 335 B.R. 66, 75-76 (Bankr. S.D.N.Y. 2005) (holding that a post-confirmation action for a turnover of property under section 542 of the Bankruptcy Code was not sufficiently related to the bankruptcy case to support jurisdiction).

However, the disputes that the parties have framed in their pleadings plainly are not so limited. WEC has argued that Santee Cooper has violated the injunction that this Court issued. WEC has also argued that the Court's approval of the Plan Funding Agreement resulted in a conveyance of the equipment that bars any claim to the contrary by Santee Cooper. Santee Cooper criticizes some of WEC's contentions, but as a general matter the Court's job in deciding whether it has subject matter jurisdiction is to consider the claims that have been pleaded, and not whether those contentions have merit. As explained in the Wright and Miller treatise:

> A corollary rule is that federal jurisdiction exists if the complaint states a case arising under federal law, even though on the merits the party may have no federal right. If the claim is bad, then judgment is to be given against the plaintiff on the merits, and even if the court is persuaded that federal law does not give the right the party claims, it is to dismiss for failure to state a claim on which relief can be granted rather than for want of jurisdiction. Dismissal for want of jurisdiction is appropriate only if the federal claim is not "substantial", i.e., it is frivolous or a mere matter of form.

*See* 20 Fed. Prac. & Proc. Deskbook § 19 (2d ed.) The Supreme Court held in 1998, in the context of "federal question" jurisdiction, that a court should exercise subject matter jurisdiction over a claim that invokes federal claims "unless the claim clearly appears to be immaterial, wholly insubstantial and frivolous, or otherwise so devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 83 (1998) (citing *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666 (1974). The Second Circuit similarly has held that courts should not conflate the jurisdictional inquiry (which relies solely on the allegations in the complaint) and an analysis of the merits of a dispute. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) (federal question jurisdiction pursuant to Article III and 28 U.S.C. § 1331 should be assessed based on the allegations in the complaint). If the complaint (taken as true) asserts a claim over which jurisdiction exists, then

11

the court should accept jurisdiction unless the claim is clearly immaterial, made solely for the purpose of obtaining jurisdiction, or wholly insubstantial and frivolous. *Id.*

Similar principles should govern the assessment of this Court's determination of whether the parties' dispute is sufficiently "related to" the WEC bankruptcy case to confer jurisdiction over the dispute. In that regard, a few of WEC's arguments seem strained beyond the breaking point. For example, WEC argues that the equipment was transferred under the Plan Funding Agreement and the confirmed Plan, and therefore that the resolution of the parties' contract dispute and other disputes necessarily involves the enforcement of the Plan and the Plan Funding Agreement. But the equipment is not mentioned in the Plan or in the Plan Funding Agreement. It is true that WEC retained whatever rights it had to the equipment under the EPC Agreement, but there is nothing in the Plan Funding Agreement or the Plan that purported to define what those rights were.

Similarly, some of WEC's "discharge" arguments go too far. If Santee Cooper had paid for the equipment and acquired ownership of the equipment under the terms of the EPC Agreement, then the discharge of "claims" against WEC would not have had any effect on that ownership. Similarly, if Santee Cooper had already acquired ownership rights under the EPC Agreement itself, then there would have been no reason to include such rights in a proof of claim alleging "damages" for rejection of the EPC Agreement.

Other claims that WEC has made, however, plainly invoke bankruptcy issues and are not insubstantial. Santee Cooper persists in contending that it has ownership rights that are not based on the terms of the EPC Agreement and that to some extent allegedly take precedence over the EPC Agreement. For example, it contends that WEC waived whatever ownership rights it could otherwise assert under the EPC Agreement (or should be estopped from asserting them) by

reason of WEC's failure to list each item of equipment in its Schedules, its failure to reclaim the equipment at an earlier date, and its actions in allowing Santee Cooper to bear the costs of maintaining the equipment. The Bankruptcy Code makes clear that a debtor-in-possession may not waive its rights to property of the estate without Court permission, however, and in this case no such permission was ever sought or granted. *See* 11 U.S.C. § 554(a). The resolution of Santee Cooper's "waiver" contentions have a far closer nexus to the bankruptcy case than do the parties' contract arguments under the terms of the EPC Agreement, because they require consideration of the effect of WEC's conduct during its bankruptcy case and whether, as a matter of bankruptcy law, such conduct could possibly have had the effect of terminating WEC's ownership rights.

WEC also contends that Santee Cooper's arguments that it has "equitable" rights to the equipment are claims that are foreclosed because they were not asserted in proofs of claim filed during the bankruptcy case, and that the current assertion of those claims violates the discharge that was granted upon confirmation of the Plan and the injunction that this Court issued when the Plan was confirmed. This is a substantial claim. For example, Santee Cooper has stressed that it spent money on the maintenance of the equipment. If Santee Cooper thinks that it should be compensated for that maintenance in any way (including by having title to the equipment awarded to it), there is a substantial basis for WEC's argument that the claim should have been asserted in a proof of claim in the bankruptcy case, and that asserting such a claim now is a violation of the discharge and of this Court's injunction.

Most significantly: Santee Cooper's "waiver" and "estoppel" contentions implicate this Court's prior orders, and the integrity of the transactions that this Court approved when the Plan was confirmed, in ways that the basic contract arguments do not. It is one thing for Santee

13

Cooper to argue that it fully paid for the equipment and that title actually passed pursuant to the terms of the parties' agreement. The various "waiver" and "estoppel" arguments that Santee Cooper has made, however, are not really arguments that WEC did not *have* title to the equipment under the terms of the parties' agreements, or that title actually vested in Santee Cooper some time prior to the confirmation of the Plan and the approval of the Plan Funding Agreement. Santee Cooper acknowledges that under the EPC Agreement title was to remain with WEC until equipment was paid for. Santee Cooper's "waiver" and "estoppel" claims are in reality claims that in equity a court should retroactively revoke WEC's ownership rights, or should retroactively estop WEC from enforcing its ownership rights.

Parties who acquire assets in bankruptcy cases need (and deserve) certainty as to what they are acquiring. In this case the Court approved a transfer of all of WEC's property under the Plan, subject only to such liabilities and claims as were expressly listed as "Assumed Liabilities" in the Plan Funding Agreement. There is a substantial basis for WEC's contention that the Plan and the Plan Funding Agreement thereby vested the equipment in WEC free and clear of Santee Cooper's waiver and estoppel claims, and a substantial basis for WEC's contention that by now asserting such claims Santee Cooper is interfering with the terms of the Plan and violating the injunction issued by this Court.

In short, an argument could be made that the parties *should* have limited their disputes to the interpretation of the terms of the EPC Agreement and the allocation of the payments that were made thereunder. But the parties' own descriptions of their claims shows that the dispute is not so limited. The disputes that actually need to be resolved implicate the Court's prior orders and the transactions approved by the Court, and invoke the Court's authority to enforce its own

14

prior orders, in ways that have a close nexus to the case. The Court therefore has jurisdiction to resolve them.

### **Conclusion**

For the foregoing reasons, Santee Cooper's motion to dismiss the Complaint is denied. Santee Cooper is directed to notify the Court on or before July 31, 2019 as to whether it intends to withdraw the South Carolina complaint insofar as it relates to WEC, and WEC's rights to seek further relief in that regard are fully reserved. The parties also are directed to submit an agreed Scheduling Order on or before August 9, 2019. A separate Order will be entered to reflect these rulings.

Dated: New York, New York
       July 29, 2019

                                      **s/Michael E. Wiles**
                                      The Honorable Michael E. Wiles
                                      United States Bankruptcy Judge